# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **RANDY L. PERRY**<br>11501 Cavalier Landing Court<br>Fairfax, VA  22030<br>　　　　　Plaintiff,<br><br>　　　v.<br><br>**DAVID J. SHULKIN,**<br>**SECRETARY, UNITED STATES**<br>**DEPARTMENT OF VETERANS AFFAIRS**<br>810 Vermont Avenue, N.W.<br>Washington, D.C.  20420<br><br>　　　　　Defendant. | Civil Action No. |

## COMPLAINT AND DEMAND FOR JURY TRIAL

1. This is an action under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, as amended, and the Rehabilitation Act of 1973, 29 U.S.C. § 794(a).  Plaintiff Randy L. Perry seeks injunctive, declaratory, and other appropriate relief from Defendant's actions against him, taken based on his age, race, sex, disability, and in retaliation for his having exercised his EEO rights.

## Parties, Jurisdiction, and Venue

2. Plaintiff Randy L. Perry is a citizen of Virginia.  Since March 11, 2013, Mr. Perry has worked for Defendant United States Department of Veterans Affairs ("VA") in Washington, D.C.

3. Defendant David J. Shulkin is the Secretary of the VA, the official who heads the VA, and is sued in his official capacity only.  The VA is a department in the Executive Branch of the federal government, the mission of which is to provide vital services to America's veterans.  The

1

VA is subject to the prohibitions against discrimination, retaliation and the creation and maintenance of a hostile work environment pursuant to Title VII of the Civil Rights Act of 1964.

4. Jurisdiction of this Court is based upon 28 U.S.C. § 1332; 42 U.S.C. § 2000e-16 (incorporating by reference 42 U.S.C. § 2000e-5); 29 U.S.C. § 794(a); and 29 C.F.R. § 1614.408(b). Venue lies here pursuant to 42 U.S.C. § 2000e-16 (incorporating by reference 42 U.S.C. § 2000e-5(f)(3)) and 29 U.S.C. § 794(a) because the employment actions alleged to be unlawful were committed by Defendant and his agents within the District of Columbia and it is a claim against an agency of the United States through its Secretary.

## Exhaustion of Administrative Remedies

5. On October 18, 2016, Mr. Perry timely initiated the informal administrative EEO complaints process. On November 21, 2016, Mr. Perry timely filed a formal administrative complaint alleging that Defendant discriminated against him. On March 20, 2017, the VA acknowledged Mr. Perry's amendments to his formal complaint, which alleged that that the VA discriminated against him and retaliated against him for having exercised his EEO rights.

6. It has been more than 180 days since Mr. Perry filed his complaint of discrimination and amendments thereto and, therefore, he has exhausted his administrative remedies.

## Statement of the Facts

### Mr. Perry's Background

7. Mr. Perry currently is categorized as a 90% disabled Veteran.

8. Mr. Perry is a white male.

9. Mr. Perry is 48 years old.

10. Mr. Perry exercised his EEO rights beginning on October 18, 2016.

11. Mr. Perry has an outstanding record of military and civilian employment in the Federal Government.

12. Mr. Perry is at the GS-14 level where he has been since he joined the VA on March 11, 2013.

13. Mr. Perry entered the U.S. Army as an enlisted Logistics Soldier in 1997 where he served for three years to the rank of SGT/E5 before he received his commission from the U.S. Army Officer Candidate School in 2000.

14. After successfully graduating from both the Officers Basic and Advanced Courses, Mr. Perry then served another seven years as an Army Logistics Officer for 10 years, two months, and 26 days of cumulative Honorable Service to his country.

15. Afterwards, Mr. Perry transitioned to the civilian sector as a Senior Logistics Management Specialist at Raytheon International.  There, he served as the Integrating Contractor for the Air and Space Operations Center Weapons System.  Mr. Perry served as the primary Logistics program planner, action officer, and operations management coordinator.

16. From July 2007 to November 2008, Mr. Perry worked at Headquarters of the Department of the Army as the Principal Logistics Analyst for the G4 Operations and Readiness Division, as a Government contractor with Quantum Research International.  Mr. Perry analyzed and coordinated contingency planning for all logistical elements.  He ensured that all approved requests for equipment were validated, prioritized, and fulfilled.

17. Afterwards, Mr. Perry became a Federal Government General Schedule employee as a Program Manager, GS-13, for the ACSIM Facility and Policy Directorate, Facility Management Division for the Army.  There, Mr. Perry served as the policy and technical expert on logistics and logistic system integration and analysis.  As a program manager, he developed programs,

projects and plans that supported and promoted integration of joint logistics management and information systems.

18. While at the Army, Mr. Perry consistently received performance ratings of Outstanding.

19. On March 11, 2013, Mr. Perry left the Army to accept a promotion at the VA to GS-14 Program Analyst, Strategic Management Group ("SMG"), Office of Human Resources and Administration ("HR&A").

Mr. Perry's Employment at VALU and Attendance at the Eisenhower School

20. On December 29, 2013, Dr. George Tanner, Dean of the VA Learning University ("VALU"), recruited Mr. Perry with approval of the Assistant Secretary of HR&A via a signed realignment transfer to VALU. On June 2, 2014, Mr. Perry became Deputy Director, Leadership Development Directorate ("LDD"), VALU.

21. From November 2014 to April 2015, Mr. Perry served as the Acting Director in addition to his assigned Deputy duties for LDD, VALU.

22. While at VA, Mr. Perry consistently received performance ratings of Outstanding until December 2016.

23. At VALU, Mr. Perry's first-line supervisor was Terri Cinnamon, LDD Director.

24. Dr. Tanner wrote a letter of recommendation on June 19, 2015, to the National Defense University containing "my highest recommendation possible" that Mr. Perry be accepted to the highly competitive Dwight D. Eisenhower School for National Security and Resource Strategy ("Eisenhower School"). In his letter, Dr. Tanner stated the following about Mr. Perry:

Why do I think that Mr. Perry will excel at the Eisenhower School? Simply stated:

1. Because he is a people-person with outstanding leadership capabilities and traits. People want to be around Mr. Perry and his enthusiasm and can-do attitude are infectious – these traits will serve him well in the small group classroom environment at the Eisenhower School.

2. Because he is an individual who accepts any challenge or task with grace and easily integrates into a team at any level – meaning that he can easily transition between being the leader, a peer or a follower depending upon the circumstances.  Again, a trait that will serve him well at the Eisenhower School.
3. Because he has proven himself in academic environments in the past.  I will note that he is also currently taking graduate-level classes on his own time and at his own expense in his ongoing efforts to continue his personal and professional development.  Being in the business of training and education, this speaks volumes to me!

25. In his recommendation letter, Dr. Tanner also stated that he placed more than 100 interagency students into the NDU Colleges and that "I can say with confidence that I would rank Randy in the top 10% of all students that I have been responsible for sending to NDU."

26. For the 2015-2016 academic year, Mr. Perry was number one of the three VA employees nation-wide selected to attend the Eisenhower School.

27. Only the top five percent of selected military officers and civilians who apply for the Eisenhower School get accepted annually.

28. Mr. Perry attended the Eisenhower School from August 3, 2015, until June 9, 2016.  At the Eisenhower School, Mr. Perry earned a Master of Science degree in National Resource Strategy.  He received a performance appraisal for his ten months at the Eisenhower School from Brigadier General Thomas A. Gorry.  Brigadier General Gorry began his appraisal of Mr. Perry's ten months of performance at the Eisenhower School by stating:  "Mr. Randy L, Perry was an *outstanding* Veteran Affairs student at ES, National Defense University, for the year 2015-16."  (Emphasis added).  The appraisal went on to praise Mr. Perry for his outstanding leadership and communication skills, his extensive knowledge base, and his contributions to the academic year.  In his endorsement of Mr. Perry's logistics skills, Brigadier General Gorry stated:  "With over 16 years' professional experience in logistics and program management, he is a highly skilled multifunctional logistician with technical acumen in acquisition, policy, procurement, supply, and facility management."

29. The VA paid about $86,000 for Mr. Perry's attendance at the Eisenhower School.

30. The Eisenhower School's post-graduate ten-month academic program is designed to prepare students for future careers as strategic leaders.

31. Graduates of the Eisenhower School from the VA are expected to be placed in senior leadership positions at strategic levels upon graduation.

32. Until March 2016, it had been the responsibility of Hughes Turner, then Deputy Chief of Staff and Chairman of the VA panel that selected VA employees for National Defense University Colleges, to place Eisenhower School graduates into senior leadership positions. When Mr. Turner's position was not backfilled, the three Eisenhower School graduates were not properly placed upon graduation and thus went back to their original organizations.

Events Occurring While Mr. Perry Attended the Eisenhower School

33. While Mr. Perry was at the Eisenhower School, Dr. Tanner appointed two employees, Jesse Hawkins and Rhonda Carter, to act in Mr. Perry's place as co-Deputy Directors of LDD at VALU.

34. Dr. Tanner was planning to give, and even offered, the LDD Director position to Ms. Carter upon Mr. Perry's return from the Eisenhower School. Ms. Carter is a black female.

Mr. Perry's Return from the Eisenhower School

35. Marty Holland became the Deputy Dean for VALU shortly before Mr. Perry went to the Eisenhower School.  Upon Mr. Perry's graduation, he harassed and bullied Mr. Perry via email while he was on annual leave through July 5th, 2016, in an attempt to force him to sign retroactive performance standards that had nothing to do with any of the work Mr. Perry performed during the rating period.

36. Mr. Holland told Mr. Perry that he would be preparing his performance appraisal for 2015-16 even though Mr. Perry had not worked for Mr. Holland for even a single day of the performance appraisal period.

37. On June 24, 2016, Mr. Holland sent Mr. Perry an email in which he tried to pressure Mr. Perry to sign a summary rating from Mr. Holland.

38. On July 4, 2016, Mr. Perry brought his concerns about Mr. Holland's actions to Dr. Tanner's attention.  Dr. Tanner did nothing to resolve the matter.

39. Mr. Holland made statements to Mr. Perry in which he marginalized Mr. Perry's outstanding performance at the Eisenhower School, covering ten months of Mr. Perry's performance.

40. Fearing that Mr. Holland would damage his career, and that Dr. Tanner would do nothing about it, on August 2, 2016, Mr. Perry reported Mr. Holland's actions to Pamela Mitchell, Principal Deputy Assistant Secretary, HR&A, and Terry Mintz, Executive Director for HR&A. At a meeting of the same day, Ms. Mitchell decided that Mr. Mintz would rate Mr. Perry's performance. In addition, Ms. Mitchell decided that both she and Mr. Mintz would instruct Mr. Holland to have no further contact with Mr. Perry.

41. On September 9, 2016, Mr. Holland disobeyed the instruction of Ms. Mitchell and Mr. Mintz by requesting a meeting with Mr. Perry to discuss his performance standards.

42. Despite Mr. Perry's graduation from the Eisenhower School, the VA failed to place him in a position of senior leadership.

43. Instead, in August 2016, Ms. Mitchell placed Mr. Perry into a detail with James Stolarski, Senior Advisor to the Under Secretary for Health, to work on a Critical Staffing Initiative.

44. Ms. Mitchell knew, or should have known, at the time she assigned Mr. Perry to the detail, that Mr. Stolarski was a "Title 5 authority" hire who lacked any authority to hire or supervise other federal government employees. As such, he had no authority to appraise performance or prepare performance appraisals.

45. When Mr. Perry spoke twice with Mr. Mintz about needing some substantive work from the detail, Mr. Mintz's reply was: "Jim Stolarski wants a clerk not a PM. Randy, just squat in a corner and wait until your name is called." Another VA employee, Harry Wilkes, heard these conversations.

46. While Mr. Perry was on this detail, VALU leadership held one of its weekly meetings at which leadership discussed billets. Mr. Holland falsely stated that Mr. Perry's billet was empty. Mr. Holland's and/or Dr. Tanner's intent was to have his billet filled and to make him vulnerable to a RIF.

47. Dr. Tanner's and/or Mr. Holland's plan was to fill Mr. Perry's billet at VALU with a black, female, and nondisabled employee and to leave Mr. Perry without a billet.

Mr. Perry's EEO Complaint

48. On October 18, 2016, Mr. Perry initiated contact with an EEO Counselor at the VA's Office of Resolution Management ("ORM") and had his first meeting with her the next day.

49. On November 1, 2016, Dr. Tanner, in an attempt to damage Mr. Perry's reputation for integrity, falsely accused him, in an email he sent to Ms. Mitchell and Tracey Therit of ORM, of evading the accepted procedure for requesting leave and thereby creating a perception of impropriety. Dr. Tanner did this shortly after he learned that Mr. Perry initiated the EEO process.

50. When his complaint could not be resolved, Mr. Perry filed a formal complaint on November 21, 2016.  Mr. Perry amended the complaint, and the VA ORM acknowledged the amendments on March 20, 2017.

51. On August 22, 2017, the VA issued a Report of Investigation on Mr. Perry's formal complaint. Mr. Perry and his undersigned counsel received it on September 18, 2017.

### Mr. Perry's 2016 Performance Appraisal

52.  On December 9, 2016, Mr. Holland gave Mr. Perry a mid-year review of his performance during the performance period that had ended on September 30, 2016.

53. On December 13, 2016, only two work days after the untimely mid-year review, Mr. Holland gave Mr. Perry a performance appraisal of "Excellent" even though Mr. Perry had received an "Outstanding" rating for his ten months at the Eisenhower School.

54. This rating was discriminatory and retaliatory for the following reasons:

a.  The performance standards under which Mr. Perry's performance was rated were not the performance standards under which he worked at either the Eisenhower School or during his detail with Jim Stolarski.  Mr. Stolarski failed to provide a performance plan or standards of any kind.

b.  Mr. Holland, rather than relying upon the feedback he received from the Eisenhower School, rewrote it in order to reach the result he wanted, that is, to downgrade Mr. Perry from what he received in all of his previous ratings within the federal government in retaliation for the exercise of his EEO rights.  Mr. Perry's feedback from the Eisenhower School was that his work there as a student was "Outstanding," not merely "Excellent," as Mr. Holland falsely represented in the appraisal.

   c.  Mr. Stolarski, as a Title 5 authority official, had no authority to supervise or evaluate Mr. Perry's work.  Thus, his feedback should not have been used in support of a rating for Mr. Perry below Outstanding.

   d.  Mr. Holland did not give Mr. Perry an opportunity to submit a self-assessment, in violation of VA Handbook procedures.

Mr. Perry's Non-selection for Management Services Officer, GS-15

55. On October 28, 2016, Mr. Perry applied for the position of Management Services Officer, GS-15, posted on USA JOBS.

56. Mr. Perry was interviewed for the position by a panel on or about November 30, 2016.

57. Only Mr. Perry and Eric Whitehurst were invited for second interviews.  The second-round interview was a 30-minute meet-and-greet with Laura Akinselure and Roy Hurndon on December 8, 2016.  Ms. Akinselure, Mr. Hurndon, and Mr. Whitehurst are African American.

58. Before the second-round interviews took place, Mr. Hurndon walked Mr. Whitehurst through the Office of Administration and introduced him as the new Management Services Officer.

59. On December 15, 2016, Mr. Perry learned that Mr. Whitehurst was selected for the position.

60. Unlike Mr. Perry, Mr. Whitehurst was not selected for the Eisenhower School or any other school of the National Defense University.

61. Unlike Mr. Perry, Mr. Whitehurst had no prior General Schedule federal government experience as a manager.

62. At the time Mr. Whitehurst was selected, he was the lead program manager for the Office of Administration's significantly smaller portfolio whereas Mr. Perry was the lead program

manager for VALU, which had the largest and most complex portfolio within the Office of Human Resources and Administration, Strategic Management Group, with 29 projects worth approximately $80 million annually. By contrast, Mr. Whitehurst was responsible for one of the smallest portfolios in the Strategic Management Group.

63. Joseph Viani, former SES Director of the Office of Human Resources and Administration's Strategic Management Group, supervised both Mr. Perry and Mr. Whitehurst and recommended to Mr. Hurndon that he select Mr. Perry.

64. Mr. Viani found it odd that Mr. Whitehurst was selected over Mr. Perry for Management Services Officer.

Mr. Perry's Directed Reassignment from VALU

65. Mr. Perry learned in the fall of 2016 that through a VA reorganization, VALU would no longer exist as of January 9, 2017.

66. On November 9, 2016, Mr. Perry received a Transfer of Function Notification Memorandum (to Associate Director for Talent Assessment – Supervisory Program Analyst). The Notice stated that Mr. Perry's supervisory position in VALU would "continue in identical form" in the new office, Veterans' Health Affairs, Healthcare Leadership Talent Institute (VHA/HLTI").

67. A signed organization chart dated October 20, 2016, shows Mr. Perry's new position as being assigned to supervise two FTEs.

68. On January 8, 2017, Mr. Perry was issued an SF-50 for the transfer of his Supervisory Program Analyst Function from one location to another. It reflected a transfer of unchanged, identical supervisory authority.

69. An organization chart dated January 18, 2017, showed Mr. Perry's position as supervising five FTEs.

70. On January 30, 2017, Martin Pellum, Program Manager, VHA/HLTI, reviewed the January 18, 2017 organization chart with Mr. Perry and assured him he would be supervising five FTEs.

71. However, on January 31, 2017, Mr. Pellum contradicted all of his earlier assurances and told Mr. Perry that his position would be supervisory in name only and that the number of FTEs reporting to him would be zero.  Mr. Perry found this sudden, unjustified and illegal removal of his supervisory authority to be humiliating.

72. Mr. Perry complained to Mr. Holland and to Mr. Holland's supervisor, Denise Deitzen, and even proposed mediation.  They refused the mediation proposal and did nothing to correct the situation.  Instead, the VA's only response has been to send Mr. Perry from one detail to another.  To date, the VA has not restored Mr. Perry his supervisory authority.

73. In December of 2016, on separate occasions, Mr. Holland and Dr. Tanner asked to speak privately and in-person with Ms. Deitzen, Mr. Pellum, and Lisa Red of VHA/HLTI.   Mr. Perry has reason to believe that he was one of the topics of discussion and that the discussions resulted in how he was treated at VHA/HLTI.

FIRST CAUSE OF ACTION
DISCRIMINATION- HOSTILE WORK ENVIRONMENT

74. Mr. Perry repeats the allegations contained in paragraphs 1 through 73, as fully set forth here.

75. Mr. Perry is male, white, over the age of 40, and disabled.

76. Dr. Tanner and/or Mr. Holland discriminated against Mr. Perry by offering Rhonda Carter the GS-15 LDD Director position at VALU even though she was not qualified for the position.

77. Dr. Tanner and/or Mr. Holland discriminated against Mr. Perry by planning to take away his billet and give it to a black, female and nondisabled employee with the intent of making Mr. Perry subject to a RIF.

78. Mr. Holland tried to pressure Mr. Perry to agree to retroactive performance standards that had nothing to do with the work Mr. Perry performed during the 2015-16 performance appraisal period.  Mr. Holland disobeyed instructions from Ms. Mitchell to contact Mr. Perry no further about performance standards.

79. Mr. Holland made statements to Mr. Perry attempting to marginalize his documented outstanding performance at the Eisenhower School.

80. After Mr. Perry graduated from the Eisenhower School, instead of placing him in a position of senior leadership, Defendant placed him in a detail without any meaningful work and under the supervision of an employee without supervisory or rating authority

81. By the foregoing actions and others, Defendant subjected Mr. Perry to a severe and pervasive hostile work environment and discriminated against him because of his sex, race, age, and disability, and thereby materially and adversely altered the terms and conditions of his employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, as amended, and the Rehabilitation Act of 1973, 29 U.S.C. § 794(a).

82. Defendant's violation of Title VII caused Mr. Perry to suffer injury to his career and professional reputation, emotional pain, embarrassment, humiliation, and mental anguish, which has adversely affected his quality of life.

## SECOND CAUSE OF ACTION
## RETALIATION – HOSTILE WORK ENVIRONMENT

83. Mr. Perry repeats the allegations contained in paragraphs 1 through 73, as fully set forth here.

84. Mr. Perry engaged in protected EEO activity beginning no later than October 18, 2016, when he sought EEO counselling; on October 19, 2016, when Mr. Perry first spoke with an EEO counselor; on November 21, 2016, when he filed a formal EEO complaint; and continuing thereafter when he pursued the formal administrative EEO complaints process.

85. On November 1, 2016, Dr. Tanner attempted to damage Mr. Perry's reputation for integrity by sending an email to him and copying Ms. Mitchell and the EEO office in which he falsely accused Mr. Perry of evading the accepted procedure for requesting leave.  On December 13, 2016, Mr. Holland lowered Mr. Perry's performance rating to "Excellent" despite his receipt of an "Outstanding" rating for his matriculation at the Eisenhower School from August 3, 2015, to June 9, 2016.

86. By the foregoing actions and others, Defendant subjected Mr. Perry to a severe and pervasive hostile work environment and retaliated against him because of his protected activity, and thereby materially and adversely altered the terms and conditions of his employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16.

87. Defendant's violation of Title VII caused Mr. Perry to suffer injury to his career and professional reputation, emotional pain, embarrassment, humiliation, and mental anguish, which has adversely affected his quality of life.

## THIRD CAUSE OF ACTION
## DISCRIMINATION – FAILURE TO PROMOTE

88. Mr. Parry repeats the allegations contained in paragraphs 55 through 64, as fully set forth here.

89. Mr. Perry is male, white, over the age of 40, and disabled.

90. On December 15, 2016, Mr. Perry learned that a less qualified black applicant was selected over him for the position of Management Services Officer, GS-15.  The selecting officials, like the selectee, were black.

91. By the foregoing action, Defendant took adverse employment action against Mr. Perry on the basis of his race on the pretext that Mr. Perry was not the most qualified candidate for the position of Management Services Officer, GS-15, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16.

92. Defendant's violation of Title VII caused Mr. Perry to suffer injury to his career and professional reputation, emotional pain, embarrassment, humiliation, and mental anguish which has adversely affected his quality of life.

## FOURTH CAUSE OF ACTION
## RETALIATION – REMOVAL OF SUPERVISORY FUNCTIONS

93. Mr. Perry repeats the allegations contained in paragraphs 65 through 73, as fully set forth here.

94. Mr. Perry engaged in protected EEO activity beginning no later than October 18, 2016, when he sought EEO counselling; on October 19, 2016, when Mr. Perry first spoke with an EEO counselor; on November 21, 2016, when he filed a formal EEO complaint; and continuing thereafter when he pursued the formal administrative EEO complaints process.

95. On November 9, 2016, Mr. Perry received a notice that effective January 9, 2017, as a result of a reorganization, his supervisory position at VALU would transfer and "continue in identical form" in VHA/HLTI.  In December of 2016, both Dr. Tanner and Mr. Holland requested separate meetings with Mr. Perry's new supervisors, Mr. Pellum and Ms. Deitzen, at VHA/HLTI.  On January 31, 2017, after giving him multiple assurances to the contrary, Mr. Pellum told Mr. Perry that he was removing Mr. Perry's supervisory authority and that no one would be reporting to Mr. Perry.

96. By the foregoing action, Defendant took adverse employment action against Mr. Perry when it retaliated against him because of his protected activity, and thereby materially and adversely altered the terms and conditions of his employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16.

97. Defendant's violation of Title VII caused Mr. Perry to suffer injury to his career and professional reputation, emotional pain, embarrassment, humiliation, and mental anguish, which has adversely affected his quality of life.

.
**PRAYER FOR RELIEF**

WHEREFORE, Mr. Perry respectfully requests that the Court enter judgment in his favor and award him the following relief:

(1)  An Order declaring that Defendant violated Mr. Perry's rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16, and under the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), and restraining and enjoining Defendant from further violations.

(2) Retroactive promotion to GS-15 Management Services Officer or a comparable position within the VA in the Washington, D.C. metropolitan area effective on or about December 15, 2016.

(3) Correction of Mr. Perry's 2016 performance appraisal to an overall rating of "Outstanding," including a rating of "Outstanding" on each element, along with a commensurate cash bonus.

(4) Back pay and commensurate benefits.

(5) Compensatory damages in an amount to be determined at trial to compensate Mr. Perry for the emotional pain, embarrassment, humiliation, mental anguish, inconvenience, career loss, loss of professional reputation and career opportunities, and loss of quality of life caused by Defendant's unlawful actions.

(6) Attorney's fees and costs incurred by Mr. Perry.

(7) Such other relief as may be just and appropriate.

## JURY DEMAND

Plaintiff requests a trial by jury of all issues so triable.

Respectfully submitted,

/s/ _____

ROSA M. KOPPEL
D.C. Bar No. 405779

Law Offices of Larry J. Stein, LLC
4023 Chain Bridge Road, Suite 6
Fairfax, Virginia  22030
Telephone:  (703) 383-0300
Facsimile:  (703) 736-3115
Rosakoppel@ljslaw.net
Counsel for Plaintiff